No. 100,491

In the Matter of RICHARD E. JONES, *Respondent.*

(193 P.3d 899)

Opinion filed October 17, 2008.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*Richard E. Jones*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against Richard E. Jones, an attorney admitted to the practice of law in Kansas on September 14, 1973. Respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is in Topeka, Kansas.

The office of the Disciplinary Administrator filed two formal complaints against Respondent. The first complaint, filed August 29, 2007, contained four counts of alleged misconduct related to the representation of Justin D. Elnicki (DA9896), Kevin Leroy McLaughlin (DA9897), Linda Scanland (DA10,117), and Victor Torres (DA10,146). The second complaint, filed September 27, 2007, alleged misconduct related to the representation of Janelle L. Grubbs (DA10,065).

Ultimately, Respondent filed answers and stipulated that he did not contest the alleged facts and that he stipulated to violating certain provisions of the Kansas Rules of Professional Conduct (KRPC) and Supreme Court Rules. The complaints were consolidated for hearing on March 27, 2008, before a panel of the Kansas Board for Discipline of Attorneys, at which Respondent appeared in person and by counsel.

*HEARING PANEL FINDINGS OF FACT AND CONCLUSIONS OF LAW*

On April 27, 2008, the hearing panel issued its final hearing

report. Respondent does not contest the findings and conclusions set forth in that report, which are as follows:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:
. . . .

#### "DA9896

"2. On January 10, 2006, Justin D. Elnicki filed a complaint against the Respondent. The Disciplinary Administrator wrote to the Respondent and directed him to provide a written response to the complaint. The Respondent failed to respond to the Disciplinary Administrator's requests for a response. Eventually, in May, 2006, the Respondent provided a written response to the complaint.

#### "DA9897

"3. On February 13, 2006, the Disciplinary Administrator received a copy of an order from the United States Court of Appeals for the 10th Circuit. The Disciplinary Administrator docketed the order as a complaint.
"4. In the order, the Court provided as follows:
'This matter is before the court following issuance of an order on December 20, 2005 striking attorney Richard E. Jones from appeal number 05-311, *United States v. Kevin Leroy McLaughlin*, and referring attorney Jones to the court's, attorney discipline program.
'In appeal number 05-3111, Mr. Jones failed to file the preliminary appellate documents, failed to respond to an order of this court directing him to show cause why he should not be stricken from the appeal and referred to the court's attorney discipline program.
'Therefore, on or before February 28, 2006, Mr. Jones shall show cause in writing why he should not be sanctioned or otherwise disciplined for his failure to zealously represent his client. See 10th Cir. R. 46.6(C); see also, *Addendum III, Plan for Attorney Disciplinary Enforcement*, Sections 2.3 and 4.2. Failure to respond may warrant imposition of immediate disciplinary action. A copy of the court's *Plan for Attorney Disciplinary Enforcement* is enclosed with this order.'
"5. On March 2, 2006, the Disciplinary Administrator sent the Respondent a copy of the order forwarded by the 10th Circuit Court. The Disciplinary Administrator directed the Respondent to respond by providing the status of the matter and a copy of documentation to establish that the issue with the 10th Circuit Court had been resolved. The Respondent failed to respond to the Disciplinary Administrator.
"6. Eventually, on July 12, 2006, the Respondent provided a written response regarding the 10th Circuit Court's order. In his response, the Respondent admitted to failing to timely file required documents with the 10th Circuit Court.

"7. On November 3, 2006, the 10th Circuit Court indefinitely suspended the Respondent from practicing before its Court.

"DA10065

"8. In early 2004, Janelle L. Grubbs retained the Respondent to file a paternity action. On February 24, 2004, the Respondent filed a Petition to Determine Parentage for Ms. Grubbs.

"9. Initially, the Respondent communicated with his client and with the alleged father, Dorian Ingram.

"10. On October 20, 2004, the Court set the case for hearing. The hearing on the petition was scheduled for November 9, 2004. On that date, the Respondent failed to appear, Ms. Grubbs failed to appear, and Mr. Ingram failed to appear. Because no one appeared, the Court dismissed the case for a lack of prosecution.

"11. In May, 2005, Mr. Ingram filed a motion to enforce parenting time. At a hearing on his motion, Mr. Ingram admitted paternity. Thereafter, Ms. Grubbs repeatedly attempted to contact the Respondent regarding child support. The Respondent failed to return Ms. Grubbs' telephone calls.

"12. Eventually, in January, 2007, Ms. Grubbs hired another attorney and resolved the matter of child support.

"DA10117

"13. Linda Scanland retained the Respondent to file suit in her behalf as a result of a car accident. While in the process of settling the case with the insurance carrier and to protect against the running of the statute of limitations, the Respondent filed suit on October 13, 2005, in behalf of Ms. Scanland.

"14. The Respondent failed to obtain service of process and, on February 2, 2006, the Court issued a 'Notice for Further Action or Dismissal.' In the notice, the Court stated:

'The Court file reflects no activity on this case since the Summons Returns filed November 2, 2005 indicating ". . . [sic] no service". Unless the Court is contacted by plaintiff with a satisfactory explanation, this case will be dismissed on March 10, 2006 without further notice.'

The Respondent failed to take any action, and on March 13, 2006, the Court dismissed the case.

"15. However, one week later, and after the Respondent filed a request for an alias summons to be issued, the Court reinstated the case.

"16. It appears that the Respondent was able to effect service on the defendant. However, service was not made timely and counsel for the defendant filed a motion to dismiss. The Respondent failed to respond to the motion to dismiss. Thereafter, the Court granted the defendant's motion to dismiss and the case was again dismissed. The Respondent failed to appeal the dismissal of Ms. Scanland's case.

"17. On January 5, 2007, the Respondent wrote to Ms. Scanland and informed her that he failed her. While he did not specifically state that her case had been

dismissed, he told her that he is responsible for her not receiving the settlement offer.

"DA10146

"18. On February 19, 2007, Victor Torres filed a complaint with the Disciplinary Administrator. The Respondent had previously been appointed to represent Mr. Torres in a criminal case pending before the Shawnee County District Court.

"19. The Disciplinary Administrator wrote to the Respondent and directed him to provide a written response to the complaint. Additionally, the attorney investigator wrote to the Respondent and directed him to provide a written response to the complaint. The Respondent never provided a written response to the complaint.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.4(c), and Kan. Sup. Ct. R. 207(b), as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Ms. Scanland when he failed to exercise the thoroughness necessary to obtain service of process with the statutory time period. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. McLaughlin, Ms. Grubbs, and Ms. Scanland when he failed to diligently advance their cases. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Laughlin, Ms. Grubbs, and Ms. Scanland, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to keep Ms. Grubbs reasonably informed regarding the paternity action. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. 'A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' KRPC 3.4(c). In this case, the Respondent failed to comply with an order of the 10th Circuit Court. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(c).

"6. Lawyers must cooperate in disciplinary investigations. Kan. Sup. Ct. R. 207(b) provides the requirement in this regard:

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to

the Disciplinary Administrator any information he or she may have affecting such matters.' [2007 Kan. Ct. R. Annot. 288.]

The Respondent knew that he was required to forward a written response to the initial complaint filed by Mr. Elnicki, the 10th Circuit Court, and Mr. Torres— he had been instructed to do so in writing by the Disciplinary Administrator and by the attorney investigator. Because the Respondent failed to provide a timely written response to the initial complaints filed by Mr. Elnicki and the 10th Circuit Court and because the Respondent failed to respond to Mr. Torres' complaint, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b)."

## HEARING PANEL'S FINDINGS AND CONCLUSIONS

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see also Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence).

Here, Respondent stipulated to the factual allegations contained in the formal complaint and the disciplinary rules violations charged therein. Additionally, he filed no exceptions, the results of which render the final hearing report to be deemed admitted. See Supreme Court Rule 212(c) (2007 Kan. Ct. R. Annot. 317). We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt the panel's findings and conclusions.

## HEARING PANEL'S RECOMMENDED DISCIPLINE

### Factors

In making its recommendations for discipline, the hearing panel considered the following factors outlined by the American Bar Association's Standards for Imposing Lawyer Sanctions:

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation and reasonable communication. The Respondent violated his duty to the legal system to comply with the orders of the Court. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused potential injury to his clients, the legal system, and the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. Included in this case are five complaints. Some of the complaints involve similar misconduct. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.4(c), and Kan. Sup. Ct. R. 207(b). As such, the Respondent committed multiple offenses.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1973. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than thirty years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent suffers from depression. The Respondent's depression contributed to the violations of the Kansas Rules of Professional Conduct.

"Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. The Respondent has begun making restitution to Ms. Scanland. The Respondent has promised to make complete restitution to Ms. Scanland.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Topeka, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.' Standard 4.43.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2.

'Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.3."

## Recommended Sanction

After considering the foregoing factors, the panel made the following recommendations for the sanction to be imposed upon the Respondent:

"The Disciplinary Administrator and the Respondent jointly recommended that the Respondent be placed on probation pursuant to the terms and conditions contained in the Respondent's plan.

"The Kansas Supreme Court adopted a rule which dictates the procedure to follow when a Respondent requests probation:

'(g) Requirements of Probation

(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.' Kan. Sup. Ct. R. 211(g).

"It appears that the Respondent has fully complied with Kan. Sup. Ct. R. 211(g). The Respondent's plan is workable, substantial, and detailed. The plan of probation contains adequate safeguards that will protect the public and will ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court. Additionally, the Respondent properly distributed the plan of probation to the Hearing Panel and the Disciplinary Administrator and the Respondent put the plan of probation into effect. Further, the misconduct committed by the Respondent can be corrected by probation. Finally, placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent's license [to] practice law in the State of Kansas be suspended for a period of six months but that the suspension be stayed and the Respondent be placed on probation for a period of 2 years subject to the terms and conditions detailed below:

"1. *Psychological Treatment.* The Respondent shall continue his treatment for depression with William Albott, Ph.D., throughout the period of supervised probation unless, in Dr. Albott's opinion, continued treatment is no longer necessary. The Respondent shall comply with recommendations made by Dr. Albott. Dr. Albott shall notify the Disciplinary Administrator's office in the event that the Respondent discontinues treatment against his recommendation during the probationary period. On a quarterly basis throughout the period of probation, Dr. Albott shall provide the Disciplinary Administrator and the practice supervisor with a report regarding the Respondent's progress in therapy. The reports are to be provided January 1, April 1, July 1, and October 1, of each year during the period of probation. The Respondent shall maintain a current release of information to allow Dr. Albott to provide such information to the Disciplinary Administrator and to the practice supervisor.

"2. *Practice Supervision.* The Respondent's practice will be supervised by John J. Ambrosio, Attorney at Law, of Topeka, Kansas. Mr. Ambrosio shall be acting as an officer and agent of the Court as supervisor of probation in monitoring the Respondent's practice. The Respondent shall allow Mr. Ambrosio access to his

files, his employees, his trust account, and his doctors. Mr. Ambrosio shall monitor the following: the status of each case on the Respondent's case list, the Respondent's docketing system, the Respondent's management of discovery, and the views of the local judges regarding their evaluation of the Respondent's performance.

"3. *Weekly Meetings.* During the first year of probation, the Respondent shall meet with Mr. Ambrosio weekly. During the second year of probation, the Respondent shall meet with Mr. Ambrosio at least monthly. Additionally, Mr. Ambrosio shall be available to the Respondent by telephone for additional consultations. During the Respondent's meetings with Mr. Ambrosio, the Respondent shall disclose the status of his pending cases and, specifically, whether he has failed to timely respond to requests for discovery, to motions to compel, or to orders to show cause.

"4. *Quarterly Reports.* Every quarter, the Respondent shall provide a written report to Mr. Ambrosio regarding the status of each of the Respondent's cases. The report shall include a current case list which shall identify each case by name, set forth all deadlines scheduled by the court, a statement regarding whether each deadline was met, and an explanation if a continuance was requested. In the event a deadline is missed, the Respondent and Mr. Ambrosio shall immediately report the missed deadline to the Disciplinary Administrator. Every quarter, Mr. Ambrosio shall provide a written report to the Disciplinary Administrator regarding the Respondent's compliance with the terms of probation. The reports are to be provided January 1, April 1, July 1, and October 1, of each year during the period of probation.

"5. *Calendar.* The Respondent shall maintain a comprehensive calendar of court appearances, discovery deadlines, and other pleading deadlines. The Respondent shall allow Mr. Ambrosio access to the calender to review the entries.

"6. *Limitation of Practice.* The Respondent shall not accept any case that he does not have the time, resources, or competence to handle.

"7. *Communication.* The Respondent shall make every effort to return telephone calls within two business days of receipt.

"8. *Continued Cooperation.* The Respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information.

"9. *Restitution.* The Respondent shall complete making restitution to Ms. Scanland and shall provide proof that complete restitution has been made to Mr. Ambrosio and the Disciplinary Administrator by December 31, 2008.

"10. *Additional Violations.* The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent and Mr. Ambrosio shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator

shall take immediate action directing the Respondent to show cause why the probation should not be revoked.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCIPLINE IMPOSED

As noted, the hearing panel unanimously recommends that Respondent be suspended from the practice of law for 6 months but that the suspension be stayed and the Respondent be placed on probation for a period of 2 years. Although the Deputy Disciplinary Administrator agrees with the panel's recommendation, we are not constrained by the recommendations of either the panel or the Disciplinary Administrator as to the sanction to be imposed. Supreme Court Rule 212(f) (2007 Kan. Ct. R. Annot. 317-18) (sanction recommendations are "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended.").

After consideration of all of the factors, including Respondent's compliance to date with the terms and conditions of his probation, a majority of the court accepts the hearing panel's recommendation. A minority of the court would impose a more severe discipline.

IT IS THEREFORE ORDERED that Richard E. Jones be suspended from the practice of law in the state of Kansas for a period of 6 months but that the imposition of discipline be suspended and that Richard E. Jones be placed on probation for a period of 2 years from the date this opinion is filed under the terms and conditions set forth above in the hearing panel's recommendations.

IT IS FURTHER ORDERED that if Richard E. Jones fails to abide by the terms and conditions of his probation, a show cause order shall issue to the Respondent, and this court will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein are assessed against the Respondent.

LUCKERT, J., not participating.
HILL, J., assigned.